# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD TAUCHER<br>31 Peggy Drive<br>McDonald, PA 15057<br><br>            Plaintiff,<br><br>v.<br><br>TOPGOLF INTERNATIONAL, INC.<br>*d/b/a* TOPGOLF<br>400 Preston-Sygan Road<br>Bridgeville, PA 15017<br>     and<br>TOPGOLF PAYROLL SERVICES, LLC<br>8750 N. Central Expressway, Suite 1200<br>Dallas, TX 75231<br>     and<br>TOPGOLF USA PITTSBURGH, LLC<br>*d/b/a* TOPGOLF PITTSBURGH<br>400 Preston-Sygan Road<br>Bridgeville, PA 15017<br><br>            Defendants. | CIVIL ACTION<br><br>NO.: 2:19-cv-1280<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Ronald Taucher (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.      Plaintiff has initiated this action to redress violations by Topgolf International, Inc. *d/b/a* Topgolf; Topgolf Payroll Services, LLC; and Topgolf USA Pittsburgh, LLC *d/b/a* Topgolf Pittsburgh (*hereinafter* collectively referred to as "Defendants") of the Americans with Disabilities Act, as amended ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), and the Pennsylvania Human Relations

Act ("PHRA").[1] As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly assert personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Western District of Pennsylvania.

5. Plaintiff is proceeding herein (in part) under the ADA after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety ("90") days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. He is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file his lawsuit in advance of same because of the date of issuance of his federal right-to-sue-letter under the ADA. Plaintiff's PHRA claims however will mirror identically his federal claims under the ADA.

2

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual with an address as set forth in the caption.

8. Topgolf International, Inc. *d/b/a* Topgolf, upon information and belief, is a sports entertainment company headquartered in Texas, with golf entertainment facilities located throughout the United States (including Pennsylvania). Plaintiff was hired through and worked at Topgolf International, Inc.'s 400 Preston-Sygan Road, Bridgeville, Pennsylvania facility.

9. Topgolf Payroll Services, LLC, upon information and belief, provides payroll services for Topgolf International, Inc. *d/b/a* Topgolf, with an address at 8750 N. Central Expressway, Suite 1200, Dallas, Texas. Plaintiff's paystubs and W-2 forms list Topgolf Payroll Services, LLC as Plaintiff's employer located at that address.

10. Topgolf USA Pittsburgh, LLC *d/b/a* Topgolf Pittsburgh, upon information and belief, is a sports entertainment company with a golf entertainment facility located at 400 Preston-Sygan Road, Bridgeville, Pennsylvania. Plaintiff was hired through and worked at this address.

11. Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they made be treated as a single and/or joint employer for purposes of the instant action.

12. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendants.

## FACTUAL BACKGROUND

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. In or about June of 2018, Plaintiff was hired by Defendants to work as a cook at Defendants' 400 Preston-Sygan Road, Bridgeville, Pennsylvania location.

15. Plaintiff was generally supervised by Head Chef, Nathan Dixon (*hereinafter* "Dixon") and Chefs Chris Cree (*hereinafter* "Cree") and Darnell (last name unknown, *hereinafter* "Darnell").

16. Throughout his employment with Defendants, Plaintiff was a hardworking employee who performed his job well.

17. Plaintiff has and continues to suffer from serious health conditions, including but not limited to depression (and associated complications).

18. As a result of his aforesaid health conditions, Plaintiff experiences sleeplessness, loss of appetite, and feelings of hopelessness, which (at times) limits his ability to perform some daily life activities, including but not limited to sleeping, eating, and working (among other daily life activities).

19. Despite his aforesaid health conditions and limitations, Plaintiff was able to perform the duties of his job well with Defendants; however, Plaintiff did require some reasonable accommodations while employed with Defendants (as discussed *infra*).

20. By in or about October of 2018, over a two-year period of time, Plaintiff's mother, uncle, best friend, and girlfriend had died, which exacerbated Plaintiff's aforesaid health conditions causing increased depression.

21. As a result of his exacerbated health conditions (*see* paragraph 20), Plaintiff contacted Dixon, on or about October 7, 2018, and requested a medical leave of absence to treat and care for his depression (a reasonable accommodation under the ADA). Dixon agreed and informed Plaintiff that he could take up to six months to come back to work and to "keep in touch."

22. On or about October 15, 2018, Plaintiff was evaluated by his physician who prescribed him antidepressants and referred him to a therapist.

23. On or about October 18, 2018, Plaintiff was evaluated at Family Behavioral Resources and began treatment with a therapist.

24. While out on his aforesaid medical leave of absence, Plaintiff regularly apprised Dixon, Cree, and Darnell of his serious medical conditions and desire to return to work.

25. In or about the end of December of 2018, Plaintiff informed Dixon that he was ready to return to work full-time.

26. In response to Plaintiff's request to return to work full-time, Dixon advised Plaintiff to come to the facility on or about the beginning of January of 2019; however, when Plaintiff arrived, Dixon was away and Darnell directed Plaintiff to go back home and wait for Dixon to give him an official start date.

27. Shortly thereafter, Plaintiff spoke with Dixon who informed him that he could start back to work on or about January 15, 2019.

28. When Plaintiff arrived for work on or about January 15, 2019, however, he was unable to log in to the computer to start his shift, at which time Cree approached him and stated that he did not know Plaintiff was back to work.

29. In response to Plaintiff's inability to log in to the computer to start his shift on or about January 15, 2019, Cree reached out to another department and was informed that Plaintiff

had not yet been added back in to the system or schedule and that his paperwork was not ready. As a result, Cree sent Plaintiff home.

30. On his way home from attempting to return to work on or about January 15, 2019, Plaintiff left voicemail messages for Defendants' management, inquiring when he could return to work.

31. At no point in time after January 15, 2019, was Plaintiff contacted by Defendants' management and informed that he could return to work despite his attempts to determine his employment status following his aforesaid conversation with Cree (discussed *supra* in Paragraph 29). As a result, Plaintiff believed that he had been terminated and/or constructively terminated from his employment with Defendants and filed for unemployment compensation benefits on or about January 20, 2019.

32. Plaintiff only needed an approximate two to three-month medical leave of absence (a reasonable accommodation under the ADA). However, instead of accommodating Plaintiff, Defendants refused to place Plaintiff back on the schedule, failed to reinstate him, and effectively terminated his employment.

33. Plaintiff believes and therefore avers that he was removed from the work schedule and ultimately terminated/constructively terminated from Defendants because of: (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations (which constitutes illegal retaliation); and/or (4) Defendants' failure to properly accommodate him by failing to reinstate him following his medical leave.

## COUNT I
## Violations of the Americans with Disabilities Act, as Amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)
-Against All Defendants-

34. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

35. Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities, including but not limited to sleeping, eating, and working (among other daily life activities).

36. Plaintiff requested a reasonable accommodation from Defendants in the form of a medical leave of absence to care for and treat his aforesaid health conditions.

37. Plaintiff was terminated/constructively terminated from his employment with Defendants shortly after requesting and/or utilizing a brief medical leave to care for his aforesaid health conditions.

38. Upon Plaintiff's information and belief, Defendants failed to accommodate him by considering his request and/or need for medical leave to care for and treat his aforesaid health conditions in making the decision to terminate him and by failing to reinstate him following his medical leave.

39. Plaintiff believes and therefore avers that he was removed from the work schedule and ultimately terminated/constructively terminated from Defendants because of: (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations (which constitutes illegal retaliation); and/or (4) Defendants' failure to properly accommodate him by failing to reinstatement him following his medical leave of absence.

40. These actions aforesaid constitute violations of the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

7

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: October 7, 2019